Joseph A. BARNES, Lucille N. Barnes, Clarence H. Berg, Peter J. Nemec, and Agnes C. Nemec, Plaintiffs-Appellants,

v.

Donald P. HODEL *, Secretary of the United States Department of the Interior, and Bureau of Land Management, Oregon State Office, Defendants-Appellees.

No. 86–3782.

United States Court of Appeals, Ninth Circuit.

Argued May 6, 1987.

Submitted May 13, 1987.

Decided June 9, 1987.

* Donald P. Hodel has been substituted for William P. Clark as defendant in this appeal pursuant to Fed.R.App.P. 43(c)(1).

Edward Ray Fechtel, Portland, Or., for plaintiffs-appellants.

William B. Lazarus, Washington, D.C., for defendants-appellees.

Before ANDERSON, TANG and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

Joseph A. Barnes, Lucille N. Barnes, Clarence H. Berg, Peter J. Nemec, and Agnes C. Nemec (here collectively "Barnes") appeal from summary judgment in favor of the Secretary of the Interior. We affirm.

## PROCEEDINGS

In 1983, Barnes was issued mineral patent No. 36–83–0013 for the Deep Diggings and High Bar placer mining claims encompassing 114.22 acres of land described as "Willamette Meridian, Oregon. Township 29 South, Range 7 West, Section 19, Lots 9, 15, 18, 19, and 22" ("Section 19"). The patent reserved disposal of the timber to the United States.

Barnes appealed the reservation, made by the Oregon State Office of the Bureau of Land Management, to the Board of Land Appeals, a higher agency within the Department of the Interior. That Board, in an opinion authored by Administrative Judge Will A. Irwin and concurred in by Administrative Judges Douglas E. Henriques and Edmund W. Stueling, rejected Barnes' appeal. Barnes then brought this action in the district court to obtain an order requiring the Secretary of the Interior to issue a patent without restrictions.

Jurisdiction exists under 28 U.S.C. § 1331. Magistrate Michael Hogan made findings and recommendations rejecting Barnes' petition, and the district court gave summary judgment for the Secretary. This appeal followed.

## ANALYSIS

A valid mining claim encompasses the resources on the surface. *Del Monte M and M Co. v. Last Chance M and M Co.,* 171 U.S. 55, 18 S.Ct. 895, 43 L.Ed. 72 (1898). Barnes bases his position on this general principle of property law. The principle prevails if the sovereign has not reserved the resources on the surface. The United States has reserved the rights to timber on Section 19.

Section 19 was patented by the United States in 1895 to the Oregon and California Railroad Company (the "O & C"). Section 19, along with other land patented to the railroad, was forfeited by the O & C to the United States by the Revestment Act of 1916, 39 Stat. 218. The Act provided that the revested lands which were classified as timberlands by the Secretary of the Interior would be open for mineral entries but that the only timber on them that could be used by the mineral entrant would be for his mine; sale of the timber was reserved to the United States. On February 25, 1920 the Secretary of the Interior classified Section 19 as timberland. From that date forward, a mineral claim could not embrace the right to sell timber.

Barnes attacks this conclusion in five ways. First, he notes that five mineral claims to land in Section 19 were filed prior to the patenting of the land to the O & C in 1895. Under the governing statute, the O & C was not entitled to mineral lands and was on notice of these prior claims. Its application for a patent must, therefore, have been grounded on misrepresentation, and the patent itself must have been wrongly issued. The short and conclusive answer to this contention is that the patent issued to the O & C is not open to collateral attack for "fraud, error, or irregularity." *Burke v. Southern Pacific R.R. Co.,* 234 U.S. 669, 711, 34 S.Ct. 907, 923, 58 L.Ed. 1527 (1914).

Secondly, Barnes alleges that he is not attacking the patent collaterally but that it has already been judicially determined that the land subject to mineral claims did not pass to the O & C and so did not revest in the United States. *United States v. Oregon and California R.R. Co.,* 8 F.2d 645 (D.Ore.1925). This decision held that there were almost two million acres which did not originally pass to the O & C because of the mineral character of the land. This decision did not identify the lots here at issue as among those two million acres. Barnes has produced no evidence that they are. His claim fails for want of proof.

Thirdly, Barnes contends that the United States is estopped to deny his claim to the timber. In 1964 Barnes began a proceeding before the Bureau of Land Management under the Surface Resources Act of 1955, 30 U.S.C. §§ 601–615. This act provided that, as to mining claims located after July 23, 1955, the United States had the right to manage and dispose of the vegetative surface resources. § 612. As to mining claims located before that date, a procedure was set up under § 613 by which a mining claimant could assert claims in conflict with the restrictions of § 612. Barnes complied with the § 613 procedure, asserted the claims to the surface resources here at issue, and in 1966 received a decision from a hearing examiner for the BLM that the BLM "accepted the rights claimed."

Superficially, Barnes' contention has strength. He overlooks, however, § 615, which explicitly provides that the Surface Resources Act is in no way to be construed to limit or repeal existing authority to restrict or reserve any mining patent. The statute, in short, did not confer authority to repeal the reservation created by the Revestment Act.

Barnes argues that the legislative history manifests a congressional intent to quiet title to surface resources on locations made prior to 1955, and he invokes the language of H.R.Rep. No. 730, 84th Cong., 1st Sess., *reprinted in* 1955 U.S.Code Cong. & Admin.News at 2474, 2483. But the Committee Report also specifically states that the part of § 615 on which the Secretary relies is intended to respect the timber reservation on the revested O & C lands. *Id.* at 2487. The regulations issued under the 1955 Act also indicate that all existing au-

thority to restrict or reserve a patent "continue[s] in full force and effect." 43 C.F.R. § 185.137 (1964); *accord* 43 C.F.R. § 3714.3 (1986).

Barnes' most attractive argument is that § 615 compels the United States to assert its rights if it wants to preserve them in a § 613 proceeding. "Nothing" in the Act is to be construed—so the first clause of § 615 specifies—to limit or restrict any existing rights of a claimant except as a right may be limited in proceedings under § 613. Section 615 goes on to say that "nothing" in the Act shall be construed to limit or repeal existing authority to restrict or reserve a patent. In this second clause of § 615 no exception is made for § 613 proceedings. Jurisdiction is not granted to repeal earlier congressional reservations.

 Fourthly, Barnes argues that the Revestment Act was repealed by the Sustained Yield Act of August 28, 1937. The argument construes this act too broadly: the act provided that the management of the old O & C timberlands should be aimed at "permanent forest production," repealing inconsistent laws. 50 Stat. 874, 876. No intention was shown to recognize timber rights attached to mining claims located after 1916. In 1948 Congress cleared up whatever ambiguity existed by specifying that mineral claims located before the date of the Sustained Yield Act had to be perfected in accordance with the laws under which the claims had been initiated. 62 Stat. 162. The 1948 law effectively subordinated all of Barnes' claims, save the Oro Grande claim, to the Revestment Act.

Finally, Barnes maintains that his Oro Grande claim was a relocation of a claim originally located before the Revestment Act went into effect. But at that time the land was still patented to the O & C, and the claim was void. The Oro Grande claim was effectively located only on July 19, 1938. Rights under this claim are governed by the Act of April 8, 1948, which expressly denied timber rights to entrants on the land after August 28, 1937. 62 Stat. 162.

Barnes' constitutional claims have also been considered. They are without merit.

AFFIRMED.